Robert Stempler
State Bar No. 160299
E-mail:
socalconsumerlawyer@gmail.com
CONSUMER LAW OFFICE OF
ROBERT STEMPLER, APC
8200 Wilshire Blvd, Suite 200
Beverly Hills, CA 90211
Telephone: (323) 486-0102

*Attorney for Plaintiffs Terry Fabricant
and James Schaffer and the Proposed
Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCHAFFER and TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>FIRST CHOICE PAYMENT SOLUTIONS G.P., d/b/a SEKURE MERCHANT SOLUTIONS,<br><br>         Defendant. | **Case No. 8:18-cv-1981**<br><br>**COMPLAINT FOR:**<br><br>  1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)**<br>  2. **KNOWING OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)**<br><br>**Class Action**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Terry Fabricant and James Schaffer ("Plaintiffs"), by their undersigned counsel, for this class action complaint against First Choice Payment Solutions G.P. d/b/a Sekure Merchant Solutions and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Sekure" or "Defendant"), allege as follows:

## I.        INTRODUCTION

**1.**       <u>Nature of Action</u>.  Plaintiffs, individually and as class representatives for all others similarly situated, bring this action against Sekure for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Sekure, despite having settled a prior TCPA class action lawsuit, continued to engage in automated telemarketing in violation of the TCPA using automated calls and pre-recorded messages that were sent to cellular telephones.

**2.**       Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, and because Plaintiff's investigation has revealed facts—as set forth below—indicating that he was the target of one such massive company, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.      PARTIES

**3.**       Plaintiff Terry Fabricant is an individual residing in California, in this District.

**4.**       Plaintiff James Schaffer is an individual residing in California, in this District.

**5.**       Defendant First Choice Payment Solutions G.P. is a Québec general partnership doing business as Sekure Merchant Solutions. Sekure's principal place of business is located at 333-1000 Rue Saint-Antoine O, Montréal, QC

H3C 3R7, Canada, but it maintains locations in the United States, including at 1501 Broadway, 12th Floor, New York, New York 10036.

**6.**     Sekure engages in telemarketing directed into the United States nationwide, including specifically into this District. *See, e.g.,* http://content.eluta.ca/top-employer-sekure-merchant-solutions ("Sekure's call centre is the hub of a sales operation that contacts merchants and companies across the United States to offer them cheaper ways of collecting customer card payments, whether at the store checkout or online.") (Last accessed October 24, 2018).

### III.        JURISDICTION AND VENUE

**7.**     Jurisdiction.  This Court has subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' TCPA claims arise under the laws of the United States, specifically, 47 U.S.C. § 227.

**8.**     Personal Jurisdiction.  This Court has personal jurisdiction over Sekure because a substantial part of the wrongful acts alleged in this Complaint were committed in California.

**9.**     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### IV.        THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

**10.**    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**11.**    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular

telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1) (A). 47 U.S.C. § 227(b)(3).

**12.**    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**13.**    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

**14.**    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

### The Worsening Problem of Robocalls

**15.**     Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

**16.**     "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

**17.**     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

**18.**     "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

**19.**     In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

**20.**     The *New York Times* and *Wall Street Journal* and other leading news outlets have recently reported extensively on the surging number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. *E.g.*, Tara Siegel Bernard, *Yes, It's Bad. Robocalls,*

*and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

**21.**     In September, a technology provider combatting robocalls warned that nearly *half* of all calls to cell phones next year will be fraudulent. First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html. At least one of the scammer's techniques that the provider warns of—"neighborhood spoofing"—was utilized by Defendant, as set forth in further detail below.

## V.         FACTUAL ALLEGATIONS

**22.**     Sekure offers various payment technologies for businesses.

**23.**     One of Sekure's strategies for marketing its payment services and generating new customers is telemarketing.

**24.**     Sekure's telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

**25.**     Sekure uses ATDS equipment that has the capacity to store or produce telephone numbers to be called, that includes autodialers and predictive dialers and that plays a prerecorded message once the calls connect.

**26.**     The dialing system used by Sekure is the Five9 predictive dialer, a dialing system that is subject to the TCPA's ATDS protections.

**27.**     The Five9 predictive dialer works by loading a list of telephone numbers electronically into the dialer, and with the push of a single button, calls are made automatically and sequentially from that list.

**28.**     Sekure has engaged in this conduct despite the fact that it was previously sued for violating the TCPA's ATDS provisions and entered into a class action settlement.

**29.**     Since that time, Sekure has also begun to employ the use of pre-recorded messages to generate new business.

**30.**　　Recipients of these calls, including Plaintiffs, did not consent to receive such telephone calls.

**31.**　　That's because Sekure purchases the telephone numbers for calls it's going to make from the internet.

**32.**　　In fact, employees of Sekure have referred to their job as making "cold calls". *See* https://www.glassdoor.com/Reviews/Sekure-Merchant-Solutions-Reviews-E913383.htm (last visited October 26, 2018).

**33.**　　Plaintiffs are, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

**Calls to Plaintiff Fabricant**

**34.**　　Plaintiff Fabricant's telephone number, (818)-700-XXXX, is registered to a cellular telephone service.

**35.**　　On June 27, 2018 the Plaintiff received a predictively dialed call from Defendant.

**36.**　　The Plaintiff identified the call as a predictive dialer because there was a telltale click and pause sound when he picked up the phone.

**37.**　　The telemarketer, "Jonathan" attempted to sell the Plaintiff Sekure goods or services.

**38.**　　Confirming that the calls were from Sekure, "Jonathan" sent an e-mail and followed up with several live hand-dialed calls.

**Call to Plaintiff Schafer**

**39.**　　Plaintiff Schafer's telephone number, (714)-325-XXXX, is registered to a cellular telephone service.

**40.**　　On October 19, 2018, Plaintiff Schaffer sent a pre-recorded phone call sent by Sekure.

**41.**　　The pre-recorded call mentioned reducing rates for credit card payment processing, the business that Sekure is in.

**42.** However, in violation of the TCPA, the company was not identified in the pre-recorded message.

**43.** To identify the company, the Plaintiff "pressed 1" in response to the pre-record.

**44.** After pressing 1, he spoke to "Danielle", who identified herself as an employee of Sekure and attempted to sell the Plaintiff Sekure's services.

**45.** Later that morning, confirming the call, the Plaintiff received an e-mail from Danielle Gallant, whose e-mail address was "danielleg@sekurecostreview.com".

**46.** @sekurecostreview.com is the Defendant's domain name.

**47.** Plaintiffs' privacy has been violated by the above-described calls from, or on behalf of Sekure. The calls were annoying, harassing nuisances.

**48.** The Plaintiffs did not provide their prior express written consent to Sekure to receive the calls.

**49.** Plaintiffs and all members of the Class, defined below, have been harmed by the acts of Sekure because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. CLASS ACTION ALLEGATIONS

**50.** <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs brings this case on behalf of a class (the "Class") defined as follows:

> All persons to whom: (a) Sekure and/or a third party acting on Sekure's behalf made one or more non-emergency telephone calls; (b) promoting Sekure's goods or services; (c) to their cellular telephone numbers; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins February 2, 2018 through the date of trial.

**51.**     <u>Numerosity</u>.  The Class is so numerous that joinder of all its members is impracticable.  On information and belief, the Class has more than 100 members.  Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

**52.**     <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiffs and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

    a. Whether Sekure used a prerecorded voice (as opposed to a live person who acted and sounded prerecorded);

    b. Whether Sekure used an autodialer (as opposed to a human dialer who waited a long time before speaking and then made a clicking sound);

    c. Whether Sekure purchased batches of leads of prospects who had not consented to be called by it;

    d. Whether Sekure and/or its affiliates or agents, and/or other persons or entities acting on Sekure's behalf, violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

    e. Whether Sekure and/or its affiliates or agents, and/or other persons or entities acting on Sekure's behalf, knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiffs and the Class to treble damages;

    f. Whether Sekure is liable for ATDS-generated and/or automated or prerecorded calls promoting Sekure's products or services made by Sekure's affiliates, agents, and/or other persons or entities

acting on Sekure's behalf; and

g. Whether Sekure and/or its affiliates, agents, and/or other persons or entities acting on Sekure's behalf should be enjoined from violating the TCPA in the future.

**53.** Typicality. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs' claims and those of the Class arise out of the same course of conduct by Sekure and are based on the same legal and remedial theories.

**54.** Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent and capable counsel with experience in TCPA class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests contrary to or conflicting with those of the proposed Class.

**55.** Predominance. Sekure has engaged in a common course of conduct toward Plaintiffs and members of the Class. The common issues arising from this conduct that affect Plaintiffs and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy.

**56.** Superiority. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Sekure to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Sekure is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are all automated and because the TCPA articulates

bright-line standards for liability and damages.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

**57.**     Injunctive and Declaratory Relief is Appropriate. Sekure has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

**58.**     Notice.  Plaintiffs anticipate that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendant's calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses).  Plaintiffs anticipate that Class counsel will notify Class members in writing at such addresses.

## VII.        FIRST CLAIM FOR RELIEF

### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

**59.**     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

**60.**     The foregoing acts and omissions of Sekure and/or its affiliates or agents, and/or other persons or entities acting on Sekure's behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

**61.**     As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Sekure and/or its affiliates or agents and/or other persons or entities acting on its behalf, Plaintiffs and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers

using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

**62.**      Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Sekure, its affiliates and agents, and/or any other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice.

## VIII.          SECOND CLAIM FOR RELIEF

### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

**63.**      Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

**64.**      As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Sekure, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiffs and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## IX.          PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all members of the Class, pray for judgment against Sekure as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiffs as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Sekure and/or its affiliates, agents, or related entities violate the TCPA;

E. An order enjoining Sekure and its affiliates, agents and related entities from using pre-recorded messages or the Five9 dialing system;

F.  An award to Plaintiffs and the Class of damages, as allowed by law;

G. An award to Plaintiffs and the Class of attorney's fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting such other and further relief as the Court deems necessary, just and proper.

**X.       DEMAND FOR JURY**

Plaintiffs demand a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED 11/5/18.

By: */s/ Robert Stempler*

*Attorney for Plaintiffs and the Proposed Class*

COMPLAINT - 13
