Edward A. Broderick, *Admitted Pro Hac Vice*
Email: ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile:  (617) 830-0327

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs and the Settlement Classes*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCHAFFER and TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST CHOICE PAYMENT SOLUTIONS G.P., d/b/a SEKURE MERCHANT SOLUTIONS<br><br>Defendants. | NO.  8:18-cv-01981-DOC<br><br>NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed:     November 5, 2018<br>HEARING DATE:    July 20, 2020<br>TIME:                      8:30 a.m.<br>LOCATION:           411 West Fourth Street, Santa Ana, CA 92701<br><br>**Telephone Hearing Requested** |

- i -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

TO:   THE CLERK OF THE COURT; DEFENDANT FIRST CHOICE
      PAYMENT SOLUTIONS, G.P, and ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 20, 2020, at 8:30 a.m., or as soon

thereafter as this matter may be heard, at the Oakland Courthouse for the United

States District Court for the Central District of California, 411 West Fourth Street,

Santa Ana, California, 92701, Plaintiffs James Schaffer and Terry Fabricant will

move for an award of attorneys' fees, expenses and service awards in the above-

captioned matter.

Plaintiffs seek a Court order that awards Class Counsel their requested

attorneys' fees of $400,000, which is 25% of the Settlement Fund, their expenses

of $61,544.72 and incentives awards of $5,000 to each of the named Plaintiffs.

The motion will be based on: this Notice of Motion; the following

Memorandum of Points and Authorities; the declarations of Edward Broderick,

Matthew McCue, Anthony Paronich, Andrew Heidarpour, and Robert Stempler;

the records and file in this action; and such other matter as may be presented before

or at the hearing of the motion.

- ii -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................1

II.   ISSUE TO BE DECIDED......................................................2

III.  STATEMENT OF FACTS......................................................2

   A.   Statutory Background of Plaintiff's Claims ............................2

   B.   Plaintiffs' Allegations .....................................................3

   C.   The Litigation and Settlement Negotiations...........................3

   D.   The Court grants preliminary approval of the proposed settlement................5

   E.   Plaintiffs and their counsel negotiate an outstanding settlement for the class.
        ...........................................................................5

IV.   AUTHORITY AND ARGUMENT .............................................6

   A.   The percentage-of-the-fund method is the right way to determine reasonable
        attorneys' fees here because the benefit to the class is easily quantified...............6

   B.   A fee award at the Ninth Circuit benchmark of 25% of the common fund
        will fairly compensate Class Counsel for their work on behalf of the class .........9

      1.   Class Counsel achieved an excellent result for the class ...........................10

      2.   Class Counsel assumed a significant risk of no recovery .........................13

      3.   Class Counsel's skill and quality of work ensured a recovery for the class..
           ...........................................................................14

      4.   Contingent awards in similar cases show that the requested fee is at
           market—or below market in light of the results achieved...............................16

      5.   A lodestar crosscheck confirms that the requested fee is reasonable. .......17

            a.   *Class Counsel's rates are consistent with rates in the
                 community for similar work performed by attorneys of
                 comparable skill, experience, and reputation*......................17

            b.   *Class Counsel expended a reasonable number of hours
                 litigating the case*....................................................19

            c.   *The modest multiplier sought is reasonable and appropriate.*20

- iii -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

C.    Class Counsel's litigation costs were necessarily and reasonably incurred............................................................................22

D.    Plaintiffs request service awards of $5,000...................................23

V.  CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)....................................................11

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)......................................................................6

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)……………………………………………………..12

*Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014)…………………………………………………………………………12

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014)…………………………………………………………………...…12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...........................................................6

*Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014).........................................................................................14

*Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838 (C.D. Cal. Apr. 4, 2016)……………………….……………………23

*Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018)...............................................................14

*Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DAD, 2017 WL 4180497, at *9 (E.D. Cal. Sept. 21, 2017) ……………………………………..17

*del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018)…………………………………………………...24

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ............................................................................... 14-15

*Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015).........................11

*Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) ..........................14

*Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019)......................................12

*Duran v. La Boom Disco, Inc.,* No. 19-600-cv, 2020 U.S. App. LEXIS 10861, at *3 n.5 (2d Cir. Apr. 7, 2020) ..............................................................................11

*Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015)..........................................................................................6

*Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429 (C.D. Cal. July 24, 2018), ECF No. 34.............................................................................................14

*Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) ...............................................17

*Gadelhak v. AT&T Services, Inc.*, 7th Circuit Court of Appeals, Action No. 19-1739 (February 19, 2020) ..............................................................................11

- v -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

*Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452 (9th Cir. 2009) ...........................7

*Glasser v. Hilton Grand Vacations, LLC, 202 U.S. App. LEXIS 2481* (January 27, 2020)....................................................................................................................11

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sept. 7, 2017)..............................................13

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013).......................18

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. March 26, 2018).......................................16-17

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)..................................................................................20, 23

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................8

*In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ....... ....................................................................................................................7, 9, 17

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ...........................................................6, 16

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997)...........................................................................9

*In re Nat'l Collegiate Athletic Ass'n*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017).................................................25

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108 (N.D. Cal. Dec. 6, 2017) ..............................9, 10

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)......... 13, 23

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). ...............................8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ........7

*Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016)................................................................16

*Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013)...............................................................................................................12

*Jenson v. First Tr. Corp.*, No. 2:05-cv-03124-ABC-CT, 2008 WL 11338161 (C.D. Cal. June 9, 2008)...........................................................................................14

*Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) ...............................................................14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)..................22

*King v. Time Warner Cable Inc.*, 894 F.3d 473, n.5 (2d Cir. 2018)......................11

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ............................................................................15

*Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 U.S. Dist. LEXIS 186812 (N.D. Cal. May 27, 2016) .................................................15

*Marks v. Crunch*, 904 F.3d 1041 (9th Cir. 2018) ......................................... 11, 12

- vi -

*Mey v. Pinnacle Sec., LLC*, Civil Action No. 5:11CV47, 2012 U.S. Dist. LEXIS 129267 (N.D.W. Va. Sep. 12, 2012) ...................................................................14

*Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017).....................................................................................14

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)…………………………………………………………12

*Rodriguez v. W. Publishing*, 563 F.3d 948 (9th Cir. 2009)………………..…23, 24

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)…………………………………………………………...12

*Smith v. LoanMe, Inc.*, E069752, 2019 WL 6974386 (Cal. App. 4th Dist. Dec. 20, 2019) ......................................................................................................................13

*Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003)……………………………..23

*Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780 (9th Cir. 2007)………………..21

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) .............................................................................................................6

*Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018)………………………………………………………………………… .12

*Toro Lopez v. Uber Techs., Inc.,* No. 17-CV-06255-YGR, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) ………………………………………………………18

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014)…...17

*Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977)…………………23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................. 7, 10, 13, 21

**Rules**

Federal Rule of Civil Procedure 23(h) …………………………………………..22

**Statutes**

47 U.S.C. § 227(b)(1)…………………………………………………………..2

Treatises

Manual for Complex Litigation, Fourth § 14.121 (2004)……………………….8

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011)…………..20

William B. Rubenstein, 5 Newberg on Class Actions § 15:67 (5th ed. 2017)…8, 21

- vii -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

## I.   INTRODUCTION

Plaintiffs James Schaffer and Terry Fabricant ("Plaintiffs") respectfully move for an award of attorneys' fees, expenses as well as service awards to the Plaintiffs.

After engaging in fact and expert discovery, taking depositions in Canada, arguing two motions to compel discovery responses and amending the complaint based on information uncovered in discovery, Plaintiffs were armed with a sufficient understanding of the strengths and weaknesses of their case to enter into settlement negotiations. The parties' discussions were facilitated by nationally recognized mediator Peter Grilli, Esq. in Tampa, Florida in an in-person mediation session on October 29, 2019 and continued over the course of the following months. The parties proposed Settlement Agreement was granted preliminary approval by the Court on March 30, 2020 (Dkt. 64).

To compensate them for their efforts, the risk they undertook, and—most importantly—their results, Class Counsel respectfully request a fee at the Ninth Circuit's benchmark rate of 25% of the common fund, or $400,000, along with reimbursement of $61,544.72 in out-of-pocket incurred in prosecuting the case.

Class Counsel also respectfully request that the Court approve a service award to each of the named Plaintiff in the amount of $5,000 for their work on behalf of the class. Plaintiffs actively participated in the case since its inception,

- 1 -

responding to written discovery and preparing to be deposed. When courts approve meaningful awards, they signal to other prospective class representatives that their participation is invited and will be recognized.

## II.     ISSUE TO BE DECIDED

Whether the requested attorneys' fees, costs, and service awards are reasonable and should be awarded.

## III.     STATEMENT OF FACTS

### A.     Statutory Background of Plaintiff's Claims

The TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1).

California Penal Code § 632.7 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other while the person being recorded is on a cellular telephone. Penal Code § 632.7 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed. The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally.

- 2 -

**B.      Plaintiffs' Allegations**

On June 27, 2018 the Plaintiff Fabricant alleges that he received a predictively dialed call from Defendant on his cellular telephone using an ATDS. Mr. Fabricant alleges that the telemarketer, "Jonathan" attempted to sell the Plaintiff Fabricant Sekure goods or services. Fabricant alleges that "Jonathan" never disclosed that the call was being recorded.

Plaintiff Schafer alleges that on October 19, 2018 he was called by Sekure on his cellular telephone via an ATDS. Plaintiff Schafer spoke to "Danielle", who identified herself as an employee of Sekure and attempted to sell the Plaintiff Sekure's services. Plaintiff Schafer alleges he was not informed that the call was being recorded.

**C.      The Litigation and Settlement Negotiations**

The parties litigated this action for over a year before commencing settlement negotiations. Plaintiffs' initial complaint field on November 5, 2018 alleged only TCPA violations. On June 18, 2019, based on information received in discovery, Plaintiffs added a second count for alleged violations of CIPA. Over the course of discovery, Plaintiffs propounded multiple sets of discovery to Defendant served third party subpoenas to parties involved in the telemarketing, received more than 10,000 pages of documents in response and took depositions of three of

- 3 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

Defendant's employees in Montreal, Canada. Plaintiffs also retained an expert witness, Anya Verkhovskaya, to analyze the call records obtained in discovery to identify the number of calls and recordings. Plaintiffs retained a second expert, Randy Snyder, to opine on whether the Five9 system allegedly used by Defendant qualified as an ATDS.  The Plaintiffs retained a third expert, Dr. Michael Mandel, to opine on the ability to identify which telemarketing calls were recorded for purposes of a CIPA violation.

Armed with a well-developed record, Plaintiffs participated in a mediation session in Tampa, Florida on October 29, 2019 with Peter J. Grilli, Esq., a nationally-recognized mediator with particular expertise in resolving TCPA class actions. Broderick Dec. ¶ 7. While the mediation session did not result in a settlement, in the following months, the Parties continued to pursue subsequent, good-faith, arms-length settlement negotiations that resulted in an agreement on the material terms of this Agreement. Plaintiffs secured classwide relief despite risks and challenges to continuing to litigate.

Over the course of this litigation, the five firms representing the Plaintiffs spent 534.6 yielding a lodestar of $295,245 for attorney time. Plaintiffs' counsel also incurred $61,544.72 in expenses.

- 4 -

**D.      The Court grants preliminary approval of the proposed settlement.**

Plaintiffs filed their unopposed motion for preliminary approval of the proposed Settlement on March 17, 2020. Dkt 60. On March 30, 2020, the Court preliminarily approved the Settlement. Dkt. 64. Under the terms of the settlement, Class Counsel are to move for an award of attorneys' fees, expenses and incentive award by April 29, 2020. In order to allow class members to be heard if they wish, Class Counsel will post this motion to the case website and Class Counsel ask that resolution of this motion be set for hearing together with Plaintiff's motion for final approval, which has been set for July 20, 2020 at 8:30 a.m.

**E.      Plaintiffs and their counsel negotiate an outstanding settlement for the class.**

The settlement requires defendant First Choice Payment Solutions G.P., d/b/a Sekure Merchant Solutions ("First Choice" or "Defendant") to pay $1,600,000 to establish a common fund for the benefit of two proposed classes of users or subscribers of 155,071 cellular telephones on a Class List. Dkt 60-1, Settlement Agreement. Based on experience with claims rates in TCPA and other class settlements, Plaintiffs' Counsel and the proposed Settlement Administrator estimate that each participating Settlement Class Member will receive approximately $60. Broderick Decl. ¶ 10. The final amount could be higher or lower depending on the number of claims. The Settlement amounts also exceed

- 5 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

those in other TCPA settlements approved in California and across the country.[1]

Finally, the Settlement includes prospective relief that will benefit all Settlement Class Members, even those who do not make a claim. First Choice has changed its corporate practices to increase awareness of TCPA compliance. Settlement Agreement ¶4.2.

## IV.    AUTHORITY AND ARGUMENT

**A.    The percentage-of-the-fund method is the right way to determine reasonable attorneys' fees here because the benefit to the class is easily quantified.**

It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* "Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against

---

[1] *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each class member received $34.60 per claimant); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each).

the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* "Ninth Circuit jurisprudence" "permits the application of common fund principles where" "the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009). "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (collecting cases).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). That is so in part because "the benefit to the class is easily quantified in common-fund settlements." *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d at 942.

The lodestar method, by contrast, is when the relief is "primarily injunctive in nature and thus not easily monetized." *Id.* at 941. Courts also use the lodestar

method to determine a reasonable fee in cases involving a fee-shifting statute "such as federal civil rights, securities, antitrust, copyright, and patent acts." *Id*.

Courts have extolled the benefits of the percentage-of-the-fund method, particularly when compared to the inefficiencies created by the lodestar method. As one court explained, "a number of salutary effects can be achieved by [using the percentage method], including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989). Most critically, the percentage method aligns lawyers' interest with the interest of class members "in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Given the many advantages of the percentage method, "only about 10% of courts use a pure lodestar method" to determine fees in common fund cases. William B. Rubenstein, 5 Newberg on Class Actions § 15:67 (5th ed. 2017). "After a period of experimentation with the lodestar method . . . the vast majority of courts of appeal now permit or direct district courts to use the percentage-fee method in common-fund cases." Manual for Complex Litigation, Fourth § 14.121 (2004) (footnotes omitted).

Here, because the benefit to the class is easily quantified, the percentage-of-the-fund method is the right way to determine a reasonable fee. Class Counsel's efforts resulted in a $1,600,000 non-reversionary common fund for the benefit of the class members. Dkt. No. 60-1 §§ 1.45, 4.3. Using the percentage method in this case will recognize Class Counsel's efficiency and their efforts to achieve the highest possible recovery for the class while avoiding the risk that a verdict or appeal could leave class members empty-handed.

**B.    A fee award at the Ninth Circuit benchmark of 25% of the common fund will fairly compensate Class Counsel for their work on behalf of the class**

The Ninth Circuit has instructed that 25% is "a proper benchmark" for common fund fees, which commonly range from 20% to 30% of the fund. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). "[C]ourts typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *In re Bluetooth Headset Products Liability Litig*, 654 F.3d at 942 (quotation marks omitted). "[T]his Court has referred to the many cases in this circuit that have granted fee awards of 30% or more." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108, at *5 (N.D. Cal. Dec. 6, 2017) (quotation marks omitted).

- 9 -

The percentage may be adjusted up or down from 25% based on the court's consideration of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The relevant considerations include (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the quality of the work, and (4) whether the fee is above or below the market rate. *Id.* at 1048-50. "The most important factor is the results achieved for the class." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *6. That and the other factors confirm that an award at the benchmark of 25% is appropriate here.

### 1.    Class Counsel achieved an excellent result for the class

Cognizant of the obstacles that could have prevented class members from recovering anything at all, Class Counsel set their sights on a resolution that would ensure that class members received financial compensation and that the allegedly unlawful calling cease. As described in Plaintiffs' Motion for Preliminary Approval, although Plaintiffs believe they have a strong case for liability, the case was not without significant legal obstacles. Broderick Decl. ¶ 7. Plaintiffs obtained calling records and expert testimony that the system used constituted an ATDS.

But success on this score was certainly not guaranteed. One of those risks focuses on the question of whether First Choice's dialing system is an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous

- 10 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

relevant issues affecting the TCPA, including definition of an ATDS under the statute[2]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C. Circuit's decision in *ACA Int'l* courts have been split on what constitutes an ATDS under the TCPA.

The Ninth Circuit's view, announced in *Marks v. Crunch*, 904 F.3d 1041 (9th Cir. 2018) that to qualify as an ATDS a dialer need not generate the numbers that it are going to be called, has become a minority view among circuit courts to consider the issue. *See Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015) (holding that "'random or sequential' number generation ... refers to the numbers themselves rather than the manner in which they are dialed"). The Second Circuit seems to agree with the Third Circuit in *King v. Time Warner Cable Inc.*, 894 F.3d 473, n.5 (2d Cir. 2018), although *King* remanded the ATDS issue to the District Court for further factual findings. The Eleventh Circuit has adopted a version of the same analysis, *Glasser v. Hilton Grand Vacations, LLC, 202 U.S. App. LEXIS 2481* (January 27, 2020), as did the Seventh Circuit, *Gadelhak v. AT&T Services, Inc.*, 7th Circuit Court of Appeals, Action No. 19-1739 (February 19, 2020). The Second Circuit has recently adopted the reasoning of *Marks*. *Duran v. La Boom Disco, Inc.,* No. 19-600-cv, 2020 U.S. App. LEXIS 10861, at *3 n.5 (2d Cir. Apr. 7, 2020). If the Supreme Court were to reject the reasoning of *Marks*

---

[2]    *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

in resolving the circuit split (or if the Ninth Circuit itself reconsidered) no one in the TCPA Class would receive *anything* for TCPA claims. In fact, currently pending before the Supreme Court is a petition for certiorari filed on October 17, 2019 from *Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019), which relates to the Ninth Circuit decision in *Marks*.

Class certification is also far from automatic in TCPA cases.[3]  n addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.[4]

Moreover, the narrative of the Settling Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context.  For

---

[3] *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

[4] *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights ….  Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sept. 7, 2017).

Plaintiffs' CIPA claims face a significant challenge as well. On Dec. 20, 2019, the Court of Appeal in *Smith v. LoanMe, Inc.*, E069752, 2019 WL 6974386 (Cal. App. 4th Dist. Dec. 20, 2019) ruled, that Section 632.7 applies only to third party eavesdroppers who receive (or intercept) communications without all parties consent and does not prohibit the participants in a phone call from intentionally recording it. As there is no allegation or evidence that First Choice intercepted the calls, if the *Smith* ruling were adopted by the California Supreme Court, that would deal a fatal blow to the CIPA claims. In light of these significant legal challenges, the Settlement reached here is an excellent result.

2.    <u>Class Counsel assumed a significant risk of no recovery</u>

The fee request is further supported by risks assumed by Class Counsel. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048-49. Class Counsel faced a very real risk that they would not recover any of their fees and costs. "Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration. Indeed, the risks assumed by [class counsel], particularly the risk of non-payment or reimbursement of expenses,

- 13 -

is important to determining a proper fee award." *Jenson v. First Tr. Corp.*, No. 2:05-cv-03124-ABC-CT, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) (citations omitted).

Class Counsel represented Plaintiff and the class entirely on a contingent basis. "With respect to the contingent nature of the litigation . . . courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *60 (N.D. Cal. Feb. 11, 2016) (citing *In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299).

The risk on non-payment is not merely hypothetical—Class Counsel have experienced them firsthand in other TCPA cases.[5]

3.   Class Counsel's skill and quality of work ensured a recovery for the class.

---

[5] *E.g.*, *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018) (granting motion to dismiss); *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) (granting motion to dismiss); *Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429 (C.D. Cal. July 24, 2018), ECF No. 34 (denying class certification); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) (granting motion to dismiss); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) (denying class certification); *Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) (denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014) (denying class certification); *Mey v. Pinnacle Sec., LLC*, Civil Action No. 5:11CV47, 2012 U.S. Dist. LEXIS 129267 (N.D.W. Va. Sept. 12, 2012) (granting summary judgment).

- 14 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

Despite the challenges involved, Class Counsel were able to pursue this case effectively because of their experience prosecuting TCPA class actions. Class Counsel have litigated dozens of TCPA cases—achieving a successful outcome in many--but losing some. This depth of experience with TCPA claims and class action litigation allowed Class Counsel to position the case for successful resolution, and to negotiate a settlement that capitalized on the claims' strengths while eliminating the risks of continued litigation.

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *59 (collecting cases). First Choice's counsel was Greenspoon Marder, one of the leading TCPA defense firms in the country.[6] Defendant's counsel indicated early in the litigation that they planned to aggressively challenge Plaintiff's claims on the merits, including asserting 26 affirmative defenses. Dkt. Nos. 14. The "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 U.S. Dist. LEXIS 186812, at *4 (N.D. Cal. May 27, 2016); *accord Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S.

---

[6] *See Beth-Ann E. Krimsky*, Super Lawyers (last visited Dec. 10, 2018), Press Release, Greenspoon Marder, Greenspoon Marder Law Attorney Beth-Ann Krimsky Honored As One of the Top 20 South Florida Women in Law for 2015 (Aug. 10, 2015), https://www.gmlaw.com/news/greenspoon-marder-law-attorney-beth-ann-krimsky-honored-as-one-of-the-top-20-south-florida-women-in-law-for-2015/.

Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009) (where defense counsel

"understood the legal uncertainties in this case, and were in a position to mount a

vigorous defense," the favorable settlement was a "testament to Plaintiffs'

counsel's skill").

4.  Contingent awards in similar cases show that the requested fee is at
    market—or below market in light of the results achieved.

An award of 25% of a common fund is consistent with fee awards in other

TCPA class settlements in this circuit and in federal courts around the country, and

indeed below percentages frequently awarded. The District Court for the Western

District of Washington awarded a fee of 30% of a $2.5 million settlement fund.

*Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2016 WL 4363198, at *2

(W.D. Wash. Aug. 16, 2016). As part of its analysis, the court surveyed fee awards

in TCPA settlements in the Ninth Circuit and discovered that more than half of the

awards (14 of 25) were at the 25% benchmark or higher. *Id.* at *3; *see also In re*

*Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 804 (N.D.

Ill. 2015) (determining that the typical attorneys' fee award in a consumer case is

30% of the first $10 million recovered for the class).

In addition, courts in other districts within this circuit routinely award fees

that exceed the benchmark in TCPA class actions. *See Gutierrez-Rodriguez v. R.M.*

*Galicia, Inc.,* Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal.

- 16 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

March 26, 2018) (approving award of fees and costs of 30%, based on excellent

results achieved, risks of litigation, high quality of work and contingency basis);

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014)

(finding "a 33% award of fees and costs is warranted"); *Dakota Med., Inc. v.*

*RehabCare Grp., Inc.*, No. 114CV02081DAD, 2017 WL 4180497, at *9 (E.D. Cal.

Sept. 21, 2017) (approving "an award of one-third of the $25 million settlement

fund, or $8,333,333").

     5.    <u>A lodestar crosscheck confirms that the requested fee is reasonable.</u>

Courts use a two-step process in applying the lodestar method. First, the

court calculates the "lodestar figure" by multiplying the number of hours

reasonably expended by a reasonable rate. *Moreno v. City of Sacramento*, 534 F.3d

1106, 1111 (9th Cir. 2008). Once the lodestar is determined, the amount may be

adjusted to account for several factors, such as the benefit obtained for the class,

the risk of nonpayment, the complexity and novelty of the issues presented, and

awards in similar cases. *See In re Bluetooth*, 654 F.3d at 942. Foremost among the

considerations is the benefit obtained for the class." *Id.*

     *a.    Class Counsel's rates are consistent with rates in the*
         *community for similar work performed by attorneys of comparable*
         *skill, experience, and reputation.*

In determining a reasonable hourly rate, courts look at the prevailing

market rates in the relevant community, which is the forum in which the district

- 17 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In California, courts typically approve as reasonable hourly rates billed by partners up to $850, associates up to $510, paralegals up to $240, and litigation staff up to $185. *See del Toro Lopez v. Uber Techs., Inc.,* No. 17-CV-06255-YGR, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) ("Class Counsel's hourly rates, ranging from $250 to $850 for attorneys, are reasonable in light of the market for legal services of this type and quality.").

Class Counsel have provided the Court with declarations describing the basis for their hourly rates, including their education, legal experience, and reputation in the legal community. Counsel set their rates for attorneys and staff members based on a variety of factors, including, among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. *See* Broderick Decl. ¶¶ 12-13; McCue Decl. ¶¶ 16-17; Paronich Decl. ¶¶ 4-11; Heidarpour Decl. ¶¶ 10-11; Stempler Decl. ¶¶ 2-16. Across firms, the rates Class Counsel charged for attorneys and staff members working on this matter ranged from $370.00 to $700.00. Broderick Decl. ¶ 13; McCue Decl. ¶ 16; Paronich Decl. ¶ 10; Heidarpour Decl. ¶ 10; Stempler Decl. ¶ 16. Courts have found these rates to be reasonable in numerous class action cases. *Id*. Because

- 18 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

counsel's hourly rates are in line with rates approved in similar cases in this district, counsel's hourly rates are reasonable and appropriate for calculating the lodestar. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (affidavits by plaintiffs' counsel and fee awards in other cases are sufficient evidence of prevailing market rates).

> b.   *Class Counsel expended a reasonable number of hours litigating the case.*

The number of hours that Class Counsel devoted to investigation, discovery, motion practice, trial preparation, and achieving a favorable settlement is reasonable. Since the inception of this case in 2018, Class Counsel have worked diligently to prosecute this action on behalf of the Settlement Class. Counsel served and responded to written discovery requests, produced and reviewed tens of thousands of pages of documents, and took multiple depositions of First Choice employees in Quebec, Canada. Broderick Decl. ¶ 6 Plaintiffs also issued multiple third-party subpoenas in an effort to obtain critical records of telemarketing calls made to class members which they had analyzed by expert witnesses. *Id.*

In all, Class Counsel dedicated 534.6 hours to the investigation, development, litigation, and resolution of this case. *See* Broderick Decl. ¶ 14. The resulting hours are those that would be billed to a fee-paying client in a non-contingent case. *Id.* As in every case, counsel will spend additional hours to see

- 19 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

this case through to final resolution, including the work necessary to prepare the

motion for final approval, attend the hearing on final approval, and ensure the

claims process is properly carried out. Class Counsel's total lodestar, which does

not include the time incurred to prepare this motion, is $295,245. *Id.*

> c.   *The modest multiplier sought is reasonable and appropriate.*

After determining the lodestar, courts consider the appropriate multiplier to

apply. The multiplier can be determined by dividing the total fees sought by the

lodestar. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL

496358, at *4 (N.D. Cal. Feb. 6, 2013). "The purpose of this multiplier is to

account for the risk Class Counsel assumes when they take on a contingent-fee

cases." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee

awards in class actions, particularly when the lodestar method is used to cross-

check a percentage-of-the-fund fee. *See* Richard A. Posner, Economic Analysis of

Law 783 (8th ed. 2011) ("A contingent fee must be higher than a fee for the same

legal services paid as or after they are performed. The contingent fee compensates

the lawyer not only for the legal services he renders but for the loan of those

services. The implicit interest rate on such a loan is high because the risk of default

(the loss of the case, which cancels the client's debt to the lawyer) is much higher

than in the case of conventional loans, and the total amount of interest is large not

only because the interest rate is high but because the loan may be outstanding for

- 20 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

years—and with no periodic part payment, a device for reducing the risk borne by the ordinary lender.").

Courts approach multipliers differently when the lodestar method is used as a crosscheck than when using the lodestar in fee-shifting cases. In fee-shifting cases, "the question of whether a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat hesitant to make the shift broader than is necessary" since the adversary pays the fee. 5 Newberg § 15:91. "[I]n common fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context." *Id.*

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6. The Ninth Circuit collected dozens of class action lodestars and found that in 83% of the cases the lodestar was between 1.0 and 4.0. *Id.* Courts find higher multipliers appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund).

Courts may consider the following factors when assessing the reasonableness of a multiplier: "(1) the time and labor required, (2) the novelty and

difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Application of these factors confirms that a multiplier of 1.35 is reasonable and appropriate in this case. Class Counsel took the case on a contingent basis and to the preclusion of other work. They were able to achieve a favorable settlement for the class that is comparable to other similar settlements (and superior to many) despite the challenges presented by this litigation. Class Counsel have substantial experience in litigating TCPA class actions and have earned reputations for skilled representation of victims of TCPA violations. Finally, Class Counsel will continue to respond to Settlement Class Members' calls and work with the settlement administrator through final approval and distribution of the settlement funds.

## C.   Class Counsel's litigation costs were necessarily and reasonably incurred

- 22 -

Notice and Mem. P&A. Pls' Mot. Attys' Fees, Expenses and Service awards
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

Rule 23(h) authorizes courts to award costs authorized by law or the parties' agreement. Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the work performed on behalf of the class.[7]

Class Counsel have provided the Court with declarations as to their litigation costs. These costs, the bulk of which were incurred retaining experts to perform the data analysis essential to proving First Choice's liability and damages, total $61,544.72. Broderick Decl. ¶ 5.

**D.      Plaintiffs request service awards of $5,000.**

Class representatives are eligible for reasonable service awards. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). The Ninth Circuit has explained that service awards that are "intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. W. Publishing*, 563 F.3d 948, 958-59 (9th Cir. 2009)). The awards recognize the effort class representatives expend and the financial or reputational risk they undertake in bringing the case,

---

[7] *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *9 (C.D. Cal. Apr. 4, 2016) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding costs for document review, depositions, and experts).

and to recognize their willingness to act as private attorneys general. *W. Publishing*, 563 F.3d at 958-59. The factors courts consider include the class representative's actions to protect the interests of the class, the degree to which the class has benefitted from those actions, the time and effort the class representative expended in pursuing the litigation, and any risk the class representative assumed. *Staton*, 327 F.3d at 977.

Unlike unnamed Settlement Class Members, who are passive beneficiaries of the representatives' efforts on their behalf, named class representatives agree to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties. Service payments, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. In this case, the Plaintiffs protected the interests of the Settlement Class. Each actively assisted in the prosecution of this case by responding to Defendant's discovery requests. Perhaps most important, each was ready and willing to testify at deposition and trial.

Service Awards of $5,000 are reasonable and in line with (if not below) awards approved by federal courts in California and elsewhere. *See, e.g., del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *3, 18 (N.D. Cal. Nov. 14, 2018) (approving service awards ranging from $30,000 to

- 24 -

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC

$50,000); *In re Nat'l Collegiate Athletic Ass'n*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 service awards to each of four class representatives and collecting cases approving similar awards).[8] Thus, $5,000 service awards are reasonable here.

## V.    CONCLUSION

Class Counsel respectfully request that the Court approve a fee award of $400,000, a cost award of $61,544.72 and service awards of $5,000 for each of the named Plaintiffs.

---

[8] *See also, Lofton*, 2016 WL 7985253, at *2 (awarding $15,000 incentive fee in TCPA class action); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (collecting cases approving awards ranging from $5,000 to $40,000). *Contreras v. Performance Food Grp., Inc.*, No. 4:14-CV-03380-PJH, 2016 WL 9138157, at *1 (N.D. Cal. May 4, 2016) (approving service award "in the amount of $10,000.00, for the initiation of this action, the substantial benefit conferred upon the Class, and the risks taken by stepping forward and prosecuting this action"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) (approving $10,000 service award where class representative consulted with counsel, attended mediation, contributed significant personal time, and award was paid directly by the defendant such that "class members will not fund the awards.").

By: *Edward A. Broderick*
    Edward A. Broderick, *Admitted Pro Hac*

    Robert Stempler, State Bar No. 160299
    E-mail:
    socalconsumerlawyer@gmail.com
    CONSUMER LAW OFFICE OF
    ROBERT STEMPLER, APC
    1255 W Colton Ave, Suite 607
    Redlands, CA 92374-2861
    Telephone: (323) 486-0102

    Anthony I. Paronich (P*ro hac vice*)
    Paronich Law, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    Telephone: 508.221.1510
    E-mail: anthony@paronichlaw.com

    Matthew P. McCue, *Pro Hac Vice*
    E-mail: mmccue@massattorneys.net
    THE LAW OFFICE OF MATTHEW P.
    McCUE
    1 South Avenue, Suite 3
    Natick, Massachusetts 01760
    Telephone: (508) 655-1415
    Facsimile:  (508) 319-3077

    Andrew W. Heidarpour, *Pro Hac Vice*
    E-mail: AHeidarpour@HLFirm.com
    HEIDARPOUR LAW FIRM, PPC
    1300 Pennsylvania Ave. NW, 190-318
    Washington, DC 20004
    Telephone: (202) 234-2727

    *Attorneys for Plaintiffs and the Proposed Classes*

Date:  April 29, 2020

- 26 -

1

## **CERTIFICATE OF SERVICE**

2

3      I, Edward A. Broderick, hereby certify that on April 29, 2020, I

4  electronically filed the foregoing with the Clerk of the Court using the CM/ECF

5  system, which will send notification to all counsel of record.

6                                          By: *Edward A. Broderick*
                                              Edward A. Broderick
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NOTICE AND MEM. P&A. PLS' MOT. ATTYS' FEES, EXPENSES AND SERVICE AWARDS
*Schaffer and Fabricant v. First Choice Payment Solutions, G.P.*, Case No. 8:18-cv-01981-DOC